IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FRED T. CALDWELL, | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 16-674-RGA |
| ROBERT D. WALLIS, | : | |
| Defendant. | : | |

Fred T. Caldwell, James T. Vaughn Correctional Center, Smyrna, Delaware; Pro Se Plaintiff.

Stuart B. Drowos, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware; Counsel for Defendant.

**MEMORANDUM OPINION**

July 9, 2018
Wilmington, Delaware

**ANDREWS, U.S. District Judge:**

Plaintiff Fred T. Caldwell, an inmate at the James T. Vaughn Correctional Center, in Smyrna, Delaware, filed this action pursuant to 42 U.S.C. § 1983. He proceeds *pro se* and has been granted leave to proceed in *forma pauperis*. Defendant Robert D. Wallis moves for summary judgment. (D.I. 56). Plaintiff opposes and has filed a motion for an order to redact and/or deny Defendant's motion for summary judgment. (D.I. 65). Briefing on the matters is complete.

## BACKGROUND

This case involves a fire in Plaintiff's cell on February 4, 2015, and the acts leading up to it. On January 15, 2015, Plaintiff was transferred to Building 17, A Tier, Cell L-8. (*See* D.I. 2 at p.6). His personal property, including electric/electronic appliances, arrived a few days later. (*Id.*). He alleges that when he used the electrical outlet to check his appliances, he noticed sparks spewing from the electrical outlet next to the television. (*Id.*). The electric sparks stopped, but started again days later. (*Id.*).

On January 26, 2015, Plaintiff submitted a grievance describing problems he had discovered on January 25, 2015. (D.I. 57 at Ex. A). The grievance states that Plaintiff was "shocked by electric coming from the wall out of my TV cable outlet." (*Id.*). He asked that it be fixed "URGENTLY" because when he later touched it by mistake, he was again shocked. (*Id.*). The grievance states that Plaintiff told the "8-4 shift" about this "emergency." (*Id.*).

The grievance was received by grievance office on January 27, 2015 and reviewed by Cpl. Matthew Dutton who determined that it was a routine maintenance

1

issue and not an emergency. (*Id.* at Exs. A, B). The grievance was handled, processed and resolved in accordance with the VCC's inmate grievance process/procedure. (*Id.* at Ex. B). On February 3, 2015, the grievance was referred for investigation to Defendant Lieutenant Wallis, a maintenance foreman and Delaware Department of Correction employee assigned to the VCC's maintenance section. (D.I. 57, at Ex. A, D.I. 71 at Ex. I). It is Defendant's understanding that the matter was determined to be a routine maintenance claim and not an emergency. (D.I. 71 at Ex. I). Defendant's name is printed on the top of Plaintiff's grievance, but he does not know why. (*Id.*). He did not put it there and assumes it was placed there to indicate that the grievance would be assigned to him. (*Id.*).

On the same day, Defendant went to Plaintiff's cell and inspected and examined both the coax cable and outlet/receptacle. (*Id.*). Defendant explains that he did not have tools with him because he was led to believe the complaint centered on the coax cable and, thus, no tools were necessary. (*Id.*). Plaintiff states that Defendant had a duty to at least test the outlet condition and that tools, like a voltage tester, exist to perform such testing. (D.I. 62 at p.77). Defendant did not detect or observe any of the activity complained of by Plaintiff and did not receive a spontaneous shock as described in Plaintiff's grievance. (D.I. 71 at Ex. I). According to Defendant, there were no signs of burn marks, defects, or a "poor" condition." (*Id.*) Nor did he see anything jammed in the outlet and Plaintiff never mentioned this while Defendant was conducting the inspection. (*Id.*).

Defendant explained to Plaintiff that no repairs or replacements were needed since he found nothing wrong with either the coax cable or outlet. (*Id.*). Defendant states that he never promised or indicated that he would replace or repair the outlet. (*Id.*). When Defendant asked Plaintiff to sign off on the grievance, Plaintiff refused. (*Id.*). According to Plaintiff, Defendant informed Plaintiff that he would have the outlet replaced based upon his "'mere view' of the poor condition," and he never requested that Plaintiff sign off on the grievance. (D.I. 62 at p.49). Defendant left, completed his report the same day,[1] and Plaintiff appealed the grievance.[2] (D.I. 57 at Ex. A; D.I. 71 at Ex. I.).

Defendant states that if the outlet was defective, it would have tripped the ground fault circuit interrupter (*i.e.*, GFI) and rendered the outlet and the cell without electrical service. (D.I. 71 at Ex. I). Defendant states that several cells adjoining Plaintiff's were on the same circuit, and the nature of Plaintiff's complaints would have affected the electrical service for those cells. (*Id.*).

---

[1] The entirety of the report states, "Checked the coax jack and recept[a]cle. Did not get a shock from either one. Was not able to duplicate anything stated in grievance."

[2] The grievance was forwarded to the RGC/SME on February 4, 2015. (D.I. 57 at Ex. A). Due to the February 4, 2015 fire, the grievance was delayed until March 2015. (*Id.* at Ex. B). A grievance hearing was held on March 11, 2015, and the subject matter expert (*i.e.*, SME) recommended that the grievance be denied. (*Id.* at Ex. A). The March 19, 2015 decision denied the grievance, noting that Plaintiff no longer resided in the cell of the original grievance, he had no electronics, and if any issues should arise it should be handled via a work order through the work order module. (D.I. 61 at p. 58). The Warden Designee signed the March 19, 2015 decision to the right of the words "Emergency Grievance." (*Id.*). Plaintiff states this indicates the grievance was considered as an emergency grievance. Plaintiff appealed and the denial of the grievance was upheld at all levels. (D.I. 57 at Ex. A).

According to Ernest Kulhanek, correctional officer/physical plant maintenance superintendent II, he is satisfied that Defendant properly investigated, and concluded, that the outlet and coax cable in question were not defective and fully functional as noted in Defendant's report and resolution of Plaintiff's grievance. (D.I. 57 at Ex. D). Kulhanek states that all the cells on each tier are tied in small groupings to the same electrical circuit breaker and, if there is a defective electrical outlet in one cell, that outlet will normally result in the tripping of the related circuit breaker, stopping the flow of electricity to all other cells on the same circuit breaker. (*Id.*). There were no work orders or grievances concerning this type of problem during the relevant timeframe. (*Id.*)

According to Kulhanek, Plaintiff's claim has no scientific basis because there cannot be spontaneous sparks without the insertion of a metal object or appliance plug into an outlet. (D.I. 57 at Ex. D). If an outlet is defective it will normally cause a short circuit when a metal object or appliance plug is inserted and the amperage of the outlet is exceeded. (*Id.*). When this happens, the circuit breaker will trip and the electricity will shut off as a safety feature. (*Id.*). Kulhanek states that if the outlet was defective, until grounded,[3] the circuit would be incomplete and no electricity would flow and, thus, no sparks or shocking would occur. (*Id.*).

Plaintiff states that he is a "certified home/building inspector[,] trained to inspect home/and multi-unit building general, structural, 'electrical,' plumbing, 'HVAC,' kitchen, general interior, general exterior, conditions and report condition observations." (D.I. 62

---

[3] Grounding occurs when an electrical device is plugged in and turned on or a metal object such as a stinger with uninsulated wires is inserted. (D.I. 57 at Ex. D).

4

at pp. 74-75). Plaintiff refutes Kulhanek's statements on the basis of his personal knowledge, expert opinion, and observations. (*Id.* at p. 75). Plaintiff states that no power outage/short circuit happened and therefore, the circuit was closed, allowing the flow of electricity to create sparking, but the circuit breaker safety did not trip and the ground fault circuit interrupter was not functioning and did not operate. (*Id.*) Plaintiff states that he believes a previous occupant jammed something within the outlet causing the defect, and the "unnoticed (defect cause) was caused by something that was (jammed/stuck) within the outlet which broke the interior barrier from one side to the other closing the circuit causing the sparks." (*Id.* at 76). Plaintiff states that the sparks were not caused by him or by a stinger. (*Id.*).

Plaintiff states that Defendant never moved him for his safety as Plaintiff requested. (D.I. 62 at p.96). Defendant does not recall Plaintiff asking to be moved to another cell. (D.I. 71 at Ex. I). Defendant states that there was no need, given the circumstances. (*Id.*). Defendant further states that had there been a need, he would have immediately notified the area supervisor to make that decision because he is not authorized to have an inmate moved to another cell. (D.I. 57 at Ex. B; D.I. 71 at Ex. I).

The next day, February 4, 2015, Plaintiff discovered a fire in his cell that spread to his sheet and blanket, and he unsuccessfully tried to put it out. (D.I. 2 at p.7). Plaintiff alleges the fire was the result of a faulty outlet in his cell. (*Id.* at p.6). Sergeant George Gill and his partner arrived at Plaintiff's cell. (D.I. 71 at Ex. IV). Plaintiff was on the floor with his head pointing towards the cell door, and he was unresponsive. (*Id.*). The cell was full of smoke, and any flames were apparently extinguished by the unit's

5

sprinkler system. (*Id.*). Plaintiff was pulled from the cell, he began moving and coughing, and he was secured with handcuffs. (D.I. 57 at Ex. H; D.I. 71 at Ex. IV). Gill inspected the cell to ensure all flames were extinguished and saw a blanket and sheet on the floor, partially burnt and covered with black residue from the smoke. (D.I. 71 at Ex. IV). Just outside the cell, Gill found a stinger with three square pieces of metal and three wires wrapped in Styrofoam plastic.[4] (*Id.*). Gill states that the materials were not present when he and his partner had previously been on the tier. (*Id.*). Plaintiff states that "no stinger was ever present or found inside or outside of [his] cell door/floor." (D.I. 62 at p. 64).

Plaintiff was escorted to the nurse's station where he was examined for any injuries. (D.I. 57 at Exs. E, H; D.I. 71 at Ex. IV). His lungs were clear and all results were within normal limits.[5] (D.I. 57 at Ex. E). He was also seen by mental health and, when cleared by mental health and medical, Plaintiff was transferred to Secure Housing Unit, a pre-detention hearing disciplinary unit. (D.I. 57 at Exs. F, H). Based upon his years of experience, Gill concluded that Plaintiff had been using the stinger and apparently ignited the bedding materials. (D.I. 71 at Ex. IV). Plaintiff was charged with arson, creating a health, safety or fire hazard and possession of dangerous contraband (*i.e.*, the stinger, wires and square metal pieces). Plaintiff waived the 24-hour notice of hearing, and a disciplinary hearing was held on February 5, 2015. (D.I. 57 at Ex. F, H;

---

[4] A stinger is a heating device. *See Drumgo v. Burris*, 2015 WL 4591957, at *2 (D. Del. July 29, 2015)

[5] Plaintiff states that he developed asthma as a result of the cell fire. (D.I. 2 at p.5; D.I. 62 at p.66). The Court notes evidence suggesting Plaintiff's family medical history of asthma. (D.I. 58 at Ex. J at p.2).

D.I. 71 at Ex. III). Plaintiff was found guilty of all charges. He was sanctioned to thirty days disciplinary detention and ordered to make restitution for the destroyed state-issued property. (D.I. 57 at Ex. F). His appeal was denied. (*Id.*).

Plaintiff commenced this action on August 5, 2016, alleging Defendant failed to protect him and ensure his safety after the outlet threat was reported through his grievance when Defendant: (1) failed to respond to the grievance within 24 hours;[6] (2) did not "catch the problem" at a time when the outlet sparking was active and did not replace the outlet before a fire occurred; and (3) did not inform his shift commander that Plaintiff should be moved to another cell for his safety. (D.I. 28). He seeks compensatory and punitive damages.

Defendant moves for summary judgment on the grounds that: (1) the Eighth Amendment claim against him in his official capacity is barred by the Eleventh Amendment and sovereign immunity; (2) he is entitled to qualified immunity as to the claims raised against him in his individual capacity; and (3) the claims are barred by Delaware's State Tort Claims Act. Plaintiff moves to redact Docket Item 58, filed under seal by Defendant, on the grounds that the filing violates Rule 5.2 of the Federal Rules of Civil Procedure. He opposes the motion for summary judgment on the grounds that there are genuine issues of material fact.

## STANDARDS OF LAW

---

[6] Plaintiff discusses the actions or inactions of grievance committee members in his opposition to Defendant's motion for summary judgment. When this matter was screened, all grievance claims were dismissed. (*See* D.I. 9, 10). The actions or inactions of committee members, all of whom were dismissed as defendants, have no bearing on the claim raised against Defendant and, hence, will not be further considered.

7

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-49 (1986).

## DISCUSSION

**Motion to Redact**

Defendant filed medical records and documents under seal that contain Plaintiff's personal information, to wit, exact date of birth and full social security number. (D.I. 58 at pp. 2, 9-23). Plaintiff moves to redact the documents and/or deny Defendant's motion for summary judgment on the grounds that the filing violates the Court's information policy and Plaintiff's right to medical privacy. (D.I. 65). Defendant opposes on the grounds that he has complied with the Federal Rules of Civil Procedure and this Court's Local Rules and CM/ECF Procedures.

Defendant responds, on the date of birth and social security number issue, that it did not violate any rules or procedures when counsel filed the documents at issue under seal. Defendant relies upon Rule 5.2(d) of the Federal Rules of Civil Procedure, which states: "The Court may order that a filing be made under seal without redaction." (D.I.

66). Defendant does not point to any particular order of the Court permitting the filing of sealed documents in this case. Nevertheless, the Court's CM/ECF procedures specify that there is a blanket rule that "[m]edical records, treatment and diagnosis" "shall be filed under seal with no redacted version." Electronic Case Filing CM/ECF User Manual, Section XIV.E(4), p. 49 (rev. May 31, 2018). Thus, filing medical records under seal appears literally to comply with the Court's procedures. I also note that the medical records are irrelevant to the basis for decision on the summary judgment motion. Thus, even if there were a violation, it would not be a basis to deny Defendant's summary judgment motion.

Plaintiff also argues that Defendant violated his right to medical privacy. However, once Plaintiff placed his medical condition in issue, he waived claims to confidentiality of his medical records.[7] *See, e.g., Tolliver v. Trinity Parish Found.*, 2017 WL 3288119, at *17 (D. Del. Aug. 2, 2017), *aff'd*, 723 F. App'x 166 (3d Cir. 2018); *Conneen v. MBNA Am. Bank, N.A.*, 182 F. Supp. 2d 370, 381 (D. Del. 2002) (confidentiality claim fails because plaintiff instituted claim at EEOC); *Green v. Bloodworth*, 501 A.2d 1257, 1258 (Del. Super. 1985) (filing personal injury action waives physician-patient privilege as to all medical information relevant to claim).

Accordingly, the Court will deny Plaintiff's motion (D.I. 65).

**Eleventh Amendment**

---

[7] Interrogatories propounded to Plaintiff sought dates Plaintiff was provided treatment or counseling and Plaintiff answered, "Provide (discovery) of Plaintiff's medical records 'or' see documents attached to defendant's document request." (D.I. 52 at p.9). When asked for a diagnosis and prognosis, Plaintiff answered, "asthma from (2-4-15) smoke inhalation 'etc.', diagnosis by (JTVCC) medical staff." (*Id.*).

9

Defendant moves for summary judgment on the basis of Eleventh Amendment immunity and sovereign immunity as set forth in the Delaware Constitution to the extent the claims are raised against him in his official capacity. (D.I. 57 at pp.8-10). Plaintiff responds that the claims are brought against Defendant in his individual capacity only. (D.I. 62 at pp.22-25).

Therefore, the Court will grant this portion of Defendant's motion for summary judgment.

**Eighth Amendment**

Defendant seeks summary judgment on the grounds that he has qualified immunity. (D.I. 57 at pp.10-16). He argues he should be afforded qualified immunity because the evidence of record does not support a finding of an Eighth Amendment violation. In turn, Plaintiff argues that Defendant is not entitled to qualified immunity. (D.I. 62 at pp.26-40).

Qualified immunity protects government officials from insubstantial claims in order to "shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as: (1) the official's conduct does not violate "a statutory or constitutional right, and (2) [] the right was 'clearly established' at the time of the

10

challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *al-Kidd*, 563 U.S. at 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "In other words, there must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put defendant on notice that his or her conduct is constitutionally prohibited." *McLaughlin v. Watson*, 271 F.3d 566, 572 (3d Cir. 2001). To determine if a right is clearly established, the Third Circuit directs me to first look for Supreme Court precedent. *Mammaro v. New Jersey Div. of Child Protection and Permanency*, 814 F.3d 164, 169 (3d Cir. 2016). If there is none, then I may rely on a "'robust consensus of cases of persuasive authority' in the Court[s] of Appeals." *Id.* (quoting *Taylor v. Barkes*, __ U.S. __, 135 S. Ct. 2042, 2044 (2015) (per curiam)). "[A]lthough earlier cases involving fundamentally similar facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

The Court exercises its discretion to decide which of the two prongs of the qualified immunity analysis, *i.e.*, "violation" or "clearly established right," to address first "in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236; *see Mirabella v. Villard*, 853 F.3d 641, 648–49 (3d Cir. 2017). The sequence as set forth in *Saucier v. Katz*, 533 U.S. 194 (2001), is often appropriate when analyzing

11

qualified immunity. *Pearson*, 555 U.S. at 236. Under the *Saucier* approach, first, the court examines whether or not the alleged conduct, taken in the light most favorable to Plaintiff, violated a constitutional right. *Saucier*, 533 U.S. at 201. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* If the allegations amount to the violation of a constitutional right, the court proceeds to the second inquiry and determines if the right was "clearly established in the specific context of the case." *See Brosseau v. Haugen*, 543 U.S. 194, 198 (2004); *Saucier*, 533 U.S. at 202 (noting that an officer is entitled to qualified immunity unless "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted").

At issue is whether Defendant failed to protect Plaintiff from harm which resulted in Plaintiff's injury. To state a viable Eighth Amendment claim, Plaintiff must show that (1) he was "incarcerated under conditions posing a substantial risk of serious harm," and (2) Defendant acted with "deliberate indifference" by knowingly disregarding that risk. *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994). Negligence is not enough; instead, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 835, 837; *see also Daniels v. Williams*, 474 U.S. 327, 332-34 (1986) (negligence is not compensable as a constitutional deprivation). Furthermore, the element of deliberate indifference must be viewed from the prison official's perspective at the time in question, not with hindsight's perfect vision. *See Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir. 1998). A prison official's "failure to alleviate a significant risk

12

that he should have perceived but did not" does not amount to deliberate indifference under the Eighth Amendment. *Farmer*, 511 U.S. at 838.

Plaintiff argues that Defendant had a duty to respond to his grievance within 24 hours in light of DOC policies, that Defendant conducted a deficient inspection, that Defendant never advised him the outlet was safe, and Defendant did not move Plaintiff to another cell for his safety. The unrefuted evidence of record is that Plaintiff submitted a grievance on January 26, 2015. Despite Plaintiff's position that the grievance was an emergency, DOC grievance personnel determined the grievance was a routine maintenance claim and not an emergency. It is clear in reading the grievance that Plaintiff did not complain about an "electrical outlet." Rather, he complained that electricity was spewing from the cell's "TV cable outlet." (D.I. 57 at Ex. A ("I was shocked by electric coming from the wall of my TV cable outlet. . . . [I request that] 'maintenance' [] come and check the box with the signal switch for cell lower 8 to see if that's the cause of the problem of 'electricity rapidly spewing' from my tv cable outlet.") (emphasis in original)). Investigation of the grievance was assigned to Defendant who checked the coax jack and receptacle. Defendant did not bring electrical equipment with him given Plaintiff's complaint about the cable outlet and not an electrical outlet. Regardless, Defendant did not detect or see any of the activity complained of by Plaintiff and, notably, was unable to duplicate anything as described in Plaintiff's grievance. Defendant did not see anything jammed in the outlet. Following the inspection, Defendant did not recommend that Plaintiff be moved to a different cell given his

findings after he examined the coax jack and receptacle. The next day, there was a fire in Plaintiff's cell.

The evidence of record does not support a finding that Defendant violated Plaintiff's rights under the Eighth Amendment. The parties disagree how the fire started. Plaintiff's position is that it started as a result of a defective outlet. Defendant's position is that Plaintiff started it as evidenced by the stinger found outside his cell, which Plaintiff disputes. It seems to the Court that the dispute about how the fire started is immaterial to the resolution of Plaintiff's constitutional claim. I assume Plaintiff's version is right. But that does not matter. Instead, the Court reviews the relevant issue, which is Defendant's actions after he was apprised of Plaintiff's grievance. Is there any evidence that those actions indicate he was deliberately indifferent to a serious risk of harm to Plaintiff?

DOC personnel, other than Defendant, determined that Plaintiff's grievance was not an emergency. Once assigned, Defendant conducted an inspection based upon Plaintiff's grievance. Plaintiff's claim that Defendant had a duty to immediately inspect the cell does not pass muster, given there is no evidence that Defendant was aware of Plaintiff's grievance within 24 hours of its filing. In addition, DOC policies and procedures are neither provisions in the Constitution, nor federal law. *See Companiony v. Murphy*, 2015 WL 4039866, at *6 (D. Del. July 1, 2015), *aff'd*, 658 F. App'x 118 n.6 (3d Cir. 2016). Even had Defendant been advised that Plaintiff's grievance was an emergency and failed to follow DOC policies by not investigating within 24 hours, that,

14

by itself, is not a cognizable violation subject to § 1983. *See Companiony*, 658 F. App'x at n.6.

The evidence of record cannot support a finding that Defendant was aware of a risk of serious that injury to Plaintiff and purposely failed to take appropriate steps. To the contrary, once Defendant was given the grievance to investigate, he went to Plaintiff's cell. He checked both the coax cable and the adjacent "receptacle," *i.e.*, electrical outlet. Even when considering, and accepting for the purposes of this motion, Plaintiff's statement that Defendant said he would replace the outlet based upon its poor condition,[8] the undisputed facts are that Defendant was unable to replicate or duplicate the sparking or shocking complained of by Plaintiff at the coax cable site, and he did not detect or observe any activity or receive a shock similar to Plaintiff's experience. Given these findings, no reasonable jury could find that Defendant was deliberately indifferent to a serious risk of harm in not taking steps to see that Plaintiff was moved to another cell when the outlet in question, even though in poor condition, appeared to function normally.[9]

Plaintiff's position that Defendant's actions were deficient in his manner of inspection and failure to use certain electrical tools speaks at most to negligence, nothing more. Similarly, the failure to immediately replace the outlet suggests at most negligence and nothing more, particularly in light of Defendant's inability to replicate

---

[8] Plaintiff's statement does not indicate if Defendant provided a timeframe when the outlet would be replaced.

[9] Plaintiff was present when Defendant was doing his checking. There is no claim by Plaintiff that he told Defendant he was checking the wrong thing.

Plaintiff's experiences with sparking or shocking. Mere negligence does not constitute deliberate indifference. *See Singletary v. Pennsylvania Dep't of Corr.*, 266 F.3d 186, 192 n.2 (3d Cir. 2001) (citations omitted). As stated by the Third Circuit, "[T]he United States Constitution is not a 'font of tort law.'" *Innis v. Wilson*, 334 F. App'x 454, 457 (3d Cir. 2009) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)).

Defendant's conduct did not violate Plaintiff's constitutional rights. Accordingly, qualified immunity shields Defendant from Plaintiff's claims. The Court will grant Defendant's motion for summary judgment as to this issue.

**Delaware Tort Claims Act**

Defendant argues he is entitled to immunity on the basis that governmental entities and their employees are immune from liability pursuant to Delaware's Tort Claims Act, 10 Del. C. § 4001. (D.I. 57 at pp. 16-17). Plaintiff argues that the Tort Claims Act is inapplicable based upon the fact of this case. In view of my granting summary judgment on the qualified immunity issue, I do not need to reach this issue.

## CONCLUSION

Based upon the above discussion, the Court will: (1) grant Defendant's motion for summary judgment (D.I. 56); and (2) deny Plaintiff's motion for an order to redact and/or deny Defendant's motion for summary judgment (D.I. 65).

An appropriate order will be entered.